**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

PAPAYA MEDIA CORP.,

Plaintiff,

-against-

HAVEN HEALTH MANAGEMENT, LLC,

Defendant.

-----------------------------------------------------X

**REPORT AND RECOMMENDATION**

2:25-CV-2752 (JMA) (LGD)

**LEE G. DUNST, Magistrate Judge:**

On December 12, 2025, Defendant Haven Health Management, LLC ("Haven Health" or "Defendant") filed a motion to dismiss Plaintiff Papaya Media Corp.'s ("Papaya" or "Plaintiff") Complaint (Electronic Case Filing ("ECF") No. 1, (hereinafter the "Complaint" or "Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. *See* ECF No. 14 (the "Motion" or "Mot."). Plaintiff brings this action against Defendant for violations of the Defend Trade Secrets Act of 2016, misappropriation of trade secrets, breach of contract, unjust enrichment, fraudulent inducement, and unfair competition stemming from Defendant's alleged "procurement and exploitation" of Plaintiff's proprietary marketing services. *See* Compl. ⁋⁋ 2-3. Defendant, however, argues in its Motion that Plaintiff failed to (1) plead sufficient facts for this Court to exercise personal jurisdiction over Defendant and (2) initiate this case against Defendant in the proper venue. *See* Mot. at 1. The Motion was referred to the undersigned for a Report and Recommendation by Judge Joan M. Azrack. *See* April 29, 2026 Order. For the following reasons, the undersigned respectfully recommends that the Motion be denied.

## I. BACKGROUND

Unless otherwise stated, the facts set forth below are taken from the Complaint. As this decision involves a motion to dismiss for lack of personal jurisdiction and improper venue, the Court will also consider the various affidavits submitted by the parties.[1]

### A. Factual Background

This action arises from Defendant's alleged "procurement and exploitation" of Plaintiff's "proprietary niche marketing services." *See* Compl. ⁋ 2. Plaintiff is a digital marketing company that developed a data processing product that "correctly and efficiently matches likely customers of a business with that business's advertisements." *Id*. at ⁋ 3. It then creates digital marketing campaigns using that product to generate contact lists of potential customers, which are then sold to advertisers. *See id*. at ⁋ 4.

Defendant is the owner of several substance abuse treatment centers. *See id*. at ⁋ 5. Through Live Calls Network, LLC ("LCN"), Defendant allegedly contracted with Plaintiff to use Plaintiff's data processing methods to generate leads of potential customers for their substance abuse treatment services. *See id.; see also id.* ⁋ 62. Defendant allegedly was a client of LCN which, according to Plaintiff, acted as the agent for Defendant and other drug and alcohol rehabilitation centers to purchase Plaintiff's data processing product. *See id*. at ⁋⁋ 53, 61, 66. The "Publisher Agreement" between Plaintiff and LCN was executed on April 18, 2023; while Defendant is not defined in the Publisher Agreement, Plaintiff alleges that Defendant's identity as the "Advertiser" therein was "disclosed" to Plaintiff. *See id*. ⁋⁋ 62, 64. The governing law of the contract between LCN and Plaintiff is Maryland. *See* ECF No. 1-5 at 7.

---

[1] *See Grand River Enter. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005) (holding that prior to discovery, a plaintiff can defeat a motion for lack of jurisdiction by making a *prima facie* showing, through affidavits and supporting materials, that jurisdiction exists).

On April 24, 2023, Plaintiff was invited directly as a user of Defendant's Microsoft Ads account so that Plaintiff could "upload, implement, and manage" Defendants' ad campaign. *See id.* ⁋ 72. However, Plaintiff alleges that on or about August 1, 2023, Defendant revoked Plaintiff's access to its digital marketing campaign, while continuing its own use of Plaintiff's "proprietary and confidential" methods. *See id.* ⁋⁋ 7-8, 87. Plaintiff alleges that Defendant continues to run the same digital marketing campaign on its own Microsoft Ads account created by Plaintiff without compensation. *See id.* ⁋ 90.

As a result, Plaintiff has brought claims against Defendant for violations of the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq*.) and the Maryland Uniform Trade Secrets Act (Md. Com. Law §§ 11-1201-11-1209); for breach of the Publisher Agreement; for *quantum meruit*; for unjust enrichment; for fraudulent inducement; for unfair competition; and for injunctive relief under the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq*.).

**B. Additional Facts Relevant to a Personal Jurisdiction Analysis**

Plaintiff admits that it is a New York corporation with its principal place of business in Levittown, New York. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), it argues, because "a substantial part of the events or omissions giving rise to the claim occurred in this District," given that Plaintiff's principal place of business is located within the District and Defendant "transacts and solicits business in this District." *See* Compl. ⁋⁋ 12, 117.

Defendant Haven Health is a Florida limited liability company, with its principal place of business in Palm Springs, Florida. *See id.* ⁋ 13. According to both Defendant's website and a New York State Office of Addiction Services ("OASAS") memorandum, Kirill Vesselov is member of Defendant and its CEO. *See id.* ⁋ 19. He is alleged to be a citizen and domiciliary of Florida. *See id.* ⁋⁋ 19-20. Defendant operates facilities in Arizona, Arkansas, Florida, Indiana, Massachusetts, and New Jersey. *See id.* ⁋ 21.

Through the Complaint, Plaintiff contends that "less openly" Defendant operates an adolescent drug treatment center located in Ulster County, New York called Never Alone, Inc. ("Never Alone"). *See id.* ⁋ 22. Defendant admits in its Motion that its CEO, Vesselov, is the owner of Never Alone. *See* Mot. at 17. Moreover, the Executive Director of Never Alone is also the "Executive Director – New York New Jersey" for Defendant (*see* Declaration of Nicole Haff (Opp. at 64, hereinafter "Haff Decl.") Ex. 2), and other employees identify themselves publicly and simultaneously as employes of both Defendant and Never Alone. *See* Haff Decl. Ex. 3.

The OASAS memo touches on the change in Never Alone's ownership to Vesselov, and notes that Vesselov is the owner of Defendant, and the relationship between Never Alone and Defendant was "unclear" to OASAS, because "Never Alone is currently listed on the Haven Health Management webpage as a provider." *See* Compl. ⁋ 23; *see* Compl. Ex. A at 17. The OASAS Memo further provides, "it was unclear to OASAS regarding the relationship between Haven Health Management and Never Alone employees as many were utilizing Haven Management email addresses, Haven Health Managements webpage referencing services under the name Never Alone in Hurley NY." *See id.* ⁋ 24; *see* Compl. Ex. A at 20. OASAS conditionally recommended approval of the Never Alone ownership change, on the condition that all references to Never Alone be removed from Defendant's website. *See id.* ⁋ 25.

However, Plaintiff alleges that Never Alone's website still shows indication of ownership by Defendant, including in reviews, privacy notices, social media links, promotional videos, and state filings. *See id.* ⁋ 26-30. Moreover, Plaintiffs point to: (1) other public documents for "Haven Detox LLC" including Never Alone as a related entity (*see* Haff Decl. Ex. 4); (2) a job posting by Defendant for a position in Hurley, New York (*see* Haff Decl. Ex. 5); and (3) a website listing by Defendant listing a location in New York (*see* Haff Decl. Ex. 6).

Finally, the Complaint alleges that Defendant's digital advertising – that is, the campaign at issue in the suit – specifically targets New York patients to this day. *See id.* ⁋ 31; *see also* Declaration of Brian Flores (Opp. at 62, hereinafter the "Flores Declaration" or "Flores Decl.") ⁋ 4. That is, Plaintiff alleges that the campaign it built for Defendant used similar keywords, ad copy, and structures that "previously generated substantial New York-directed traffic," and generated calls from New York residents. *See id.* ⁋⁋ 78-79.

However, Defendant offers, through its Motion and a declaration in support of its Motion, a competing picture. Firstly, it contends that it has no employees, property, or assets in New York. *See* Declaration of Kirill Vesselov (Mot. at 28, hereinafter "Vesselov Decl.") ⁋ 4. Defendant argues that it does not operate Never Alone, and that all references to Never Alone were removed from Defendant's website following the OASAS memo. *See* Mot. at 7. Moreover, Defendant argues that it is not a party to the contract between LCN and Plaintiff, is not identified by name in the contract, and is not a signatory to the contract. *See* Vesselov Decl. ⁋ 8. In fact, it argues, Defendant had not seen the contract until the Complaint was filed. *See* Mot. at 11.

**C. Procedural Background**

Plaintiff filed this Complaint on May 16, 2025. *See* ECF No. 1. On June 23, 2025, Defendant filed a request for a pre-motion conference with Judge Azrack, previewing the basis for its forthcoming motion to dismiss. *See* ECF No. 7. Following a pre-motion conference with Judge Azrack on October 15, 2025 (ECF No. 12), Defendant reiterated its intent to file its motion to dismiss. *See* ECF No. 13. The Court set a briefing schedule (*see* Nov. 3. 2025 Order), and Defendants filed their fully briefed motion on December 12, 2025. *See* ECF No. 14. That fully briefed motion contained Plaintiff's opposition (the "Opposition"), and Defendant's reply brief (the "Reply"). *See id.* On April 29, 2026, Judge Azrack referred the Motion to the undersigned for a Report and Recommendation. *See* April 29, 2026 Order.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant brings a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). The procedural posture of the case determines the plaintiff's precise burden. *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 503 (E.D.N.Y. 2005). To survive the motion to dismiss for lack of personal jurisdiction, a plaintiff is required to make "only a *prima facie* showing" that a defendant is subject to personal jurisdiction in New York. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993). At this stage, where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff, notwithstanding a controverted presentation by the moving party. *See id.* (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985)); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (holding that pleadings and sworn statements are construed in the light most favorable to the plaintiff and all doubts are resolved in its favor). While a plaintiff will ultimately have to prove the existence of personal jurisdiction over the defendant by a preponderance of evidence, prior to discovery, a plaintiff may defeat such a motion with legally sufficient allegations of jurisdiction that are pleaded in good faith. *See Photoactive Prods., Inc. v. AL-OR Int'l ¥Ltd.*, 99 F. Supp. 2d 281, 286 (E.D.N.Y. 2000) (citing *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998)).

### B. Motion to Dismiss for Lack of Venue

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the Court applies the same standard of review as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005). While "the plaintiff bears the burden of establishing that venue is

proper," *Cold Spring Harbor Lab. v. Ropes & Gray LLP,* 762 F.Supp.2d 543, 551 (E.D.N.Y. 2011) (quotation omitted), "[i]f the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]." *Gulf Ins. Co.,* 417 F.3d at 355 (quoting *CutCo Indus. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir. 1986)) (alteration in original).

It is soundly within the Court's discretion whether to dismiss an action for improper venue. *See Cold Spring Harbor Lab.,* 762 F.Supp.2d at 551 (citing *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993)). The court "must view all facts in the light most favorable to the plaintiff" (*Cold Spring Harbor Lab.,* 762 F.Supp.2d at 551 (citation omitted)) and must "accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Matera v. Native Eyewear, Inc.,* 355 F.Supp.2d 680, 681 (E.D.N.Y.2005).

## III. <u>DISCUSSION</u>

### A. Personal Jurisdiction

A court has personal jurisdiction over a non-domiciliary defendant in a civil action if it can exercise either general or specific jurisdiction over his person. *See Photoactive Prods., Inc.,* 99 F. Supp. 2d at 287. In diversity cases, the question of personal jurisdiction is determined by the law of the state in which the district court sits. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir. 1984) (citing *Arrowsmith*, 320 F.2d at 219). Thus, in New York, a plaintiff must either demonstrate that a defendant was present and doing business in New York within the meaning of N.Y. C.P.L.R. § 301 (general jurisdiction), or that the defendant committed acts within the scope of New York's long arm-statute, N.Y. C.P.L.R. § 302 (specific jurisdiction). *See Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010).

### 1. General Jurisdiction

General jurisdiction exists only when a corporation's contacts with a state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) (quoting *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945)). "A corporation is at home . . . in a state that is the company's formal place of incorporation or its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

Here, Plaintiff has not alleged facts that, if true, would be sufficient to confer general jurisdiction over Defendant. The Complaint does not allege that Defendant is incorporated in, or has a principal place of business in, New York. *See* Compl. ⁋ 21. Nor has Plaintiff alleged contacts with New York so substantial that this is the "'exceptional case' in which a corporation is 'essentially at home' in a foreign forum." *SPV OSUS Ltd. v. UBS AG,* 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015), aff'd, 882 F.3d 333 (2d Cir. 2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014)). In fact, Plaintiff makes no argument that Defendant is subject to general jurisdiction at all. Therefore, Plaintiff has "waived any argument rooted in general jurisdiction by failing to advance such a theory in their papers," and the Court declines to assess the merits of a general jurisdiction analysis. *See Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 612 n.4 (S.D.N.Y. 2016).

### 2. Specific Jurisdiction

NY CPLR § 302(a) confers personal jurisdiction where a person or their agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:
>
> (i) Regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) Expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

**a. CPLR § 302(a)(1)**

"To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC,* 450 F.3d 100, 103 (2d Cir. 2006). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 59 (2d Cir. 1985) (holding that a plaintiff's claim must be "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York."). There is no set number of contacts that will confer jurisdiction, and even a single transaction sufficiently directed at or performed in New York can confer personal jurisdiction over a non-domiciliary defendant. *See Corporate Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union*, 265 A.D.2d 274 (1st Dep't 1999). Therefore, a court must consider "the totality of the defendant's activities within the forum." *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975).

### i. "Transacting Business" Prong

#### a. Defendant Transacted Business with a New York Company Directed at New York Residents

"[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 51 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007)). "When a defendant engages in purposeful activity [in New York], personal jurisdiction is proper because [the defendant] has 'invok[ed] the benefits and protections of [New York] laws.'" *Ehrenfeld*, 9 N.Y.3d at 508 (citation omitted). "Although it is impossible to precisely fix those acts that constitute a transaction of business, our precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet,* 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007); *see also Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,* 956 F.Supp. 1131, 1135 (S.D.N.Y.1997) (finding that to determine personal jurisdiction, the "nature and quality of the New York contacts must be examined to determine their significance." (citing *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551, 553–54 (1977))). "Transacting business" under Section 302 "requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F.Supp. 587, 592 (S.D.N.Y.1990) (citations and internal quotations omitted).

Defendant argues in its Motion that "[b]ecause Haven Health is not a party to the contract alleged, and indeed was completely unaware of its existence, such a contract cannot serve as a "business transaction" sufficient to bring Haven Health under the jurisdiction of this Court." Mot. at 11. This "failure to show any privity of contract between [Plaintiff] and Haven Health," it

argues, is "fatal to [Plaintiff's] claims." *See id*. at 12. Moreover, Defendant also argues that to the extent Plaintiff relies upon the relationship between Defendant and Never Alone to confer jurisdiction, this argument, too, fails, as Plaintiff's allegations of the nature of the relationship between Defendant and Never Alone are "vague suggestions," as the entities "have no affiliation." *See* Reply at 5, Mot. at 13.

However, considering that New York courts focus on "whether a defendant's conduct constitutes 'purposeful[ ] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law'" (*see Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 155 (E.D.N.Y. 2014) (citation omitted)), the Court finds that the quality of Defendant's contacts with New York are sufficient to constitute the transaction of business in the state sufficient to satisfy Section 302(a)(1). Plaintiff contends that Defendant engaged in "extensive, purposeful conduct" directed at New York residents and at Plaintiff. *See* Opp. at 9. Firstly, Plaintiff alleges that "a portion of the digital advertising services that Haven Health purchased from Papaya Media, and still utilizes today, targets patients in New York." Compl. ⁋ 31. Plaintiff alleges that Defendant "used keywords to target New York residents," "repeatedly directed payment to Papaya in New York," "communicated with Papaya in New York on multiple occasions," and "provided Papaya with access to its [advertising] accounts." *See* Opp. at 13; *see also Fashion Fragrance & Cosm.s v. Croddick*, No. 02 Civ. 6294 (WK), 2003 WL 342273, at *4 (S.D.N.Y. Feb. 13, 2003) (holding that relevant criteria in determining if a defendant has transacted business in New York includes "the performance of the contract in New York"). Fundamentally, Exhibits 1 and 2 to the Flores Declaration demonstrate that Defendants clearly gave Plaintiff – a New York company – direct access to its advertising platforms; courts have found that such availment constitutes a purposeful transaction in the state. *See Williams v.*

*Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 272 (E.D.N.Y. 2015) (holding that defendants nevertheless "availed" themselves of the forum when they hired plaintiff to conduct their marketing and communications while she lived in New York).

Defendants further note in their Motion that the "Governing Law and Jurisdiction" provision in the contract between Plaintiff and LCN is not New York, but actually, Maryland. *See* Mot. at 13. The Supreme Court has held that choice of law provisions should not be ignored when making jurisdictional determinations. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482 (1985) (holding that "[a]lthough such a provision standing alone would be insufficient to confer jurisdiction [,]" the court considered the relationship of the parties to each other and the proposed forum state to determine whether jurisdiction was proper). "Although such provisions standing alone are insufficient to confer jurisdiction, the Court held them relevant in determining whether a defendant purposefully availed himself of the forum's laws under constitutional jurisdictional constraints." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 367 (2d Cir. 1986) (citing *Burger King Corp*., 471 U.S. at 482). In its own words, Defendant itself is playing "fast and loose" (Mot. at 13) as it argues both that it is bound by the contract for purposes of choice of law (*see* Mot. at 13), but also, in fact, that it "didn't sign and wasn't aware of" the contract. *See* Mot. at 12. While the provision is therefore relevant, the Court is not persuaded that the choice of law provision changes the remainder of the Court's analysis. *See Burger King Corp*., 471 U.S. at 482 (analyzing multiple factors, including a choice of law provision, to determine whether defendant purposefully availed itself in the forum state).

Finally, Plaintiffs allege, and Defendant does not dispute, that Defendant's advertisements created by Plaintiff targeted New York residents. This alone is not sufficient to confer jurisdiction. *See Heritage Cap. Corp. v. Bedford Computer Corp.*, No. 91 CIV. 8005

(CSH), 1992 WL 196787, at *3 (S.D.N.Y. July 31, 1992) ("The law is clear that where the foreign defendant's activities in New York constitute only advertising and solicitation of sales a New York court may not exercise personal jurisdiction over the defendant.") However, where a foreign firm not only solicits customers in New York, but also when "there are activities of substance in addition to solicitation there is presence and, therefore, jurisdiction." *See Laufer v. Ostrow*, 55 N.Y.2d 305, 310 (1982). Plaintiffs have adequately alleged Defendant's additional "activities of substance" in New York: Plaintiff asserts that "Haven Health operates Never Alone, Inc. ("Never Alone"), an adolescent drug treatment center located in Ulster County, New York, without regulatory approval." Compl. ¶ 22. Plaintiff also alleges that Defendant maintains job postings in New York state (*see* Haff Decl., Ex. 5), has employees who convey themselves as working in the state (*see* Haff Decl. Exs. 2, 3) and has public information listing New York locations (*see* Haff Decl. Exs. 4, 6). The Court finds that these allegations, coupled with the alleged advertising to New York residents, independently constitutes transacting business in the state.

**b. An Agency Relationship Exists between Defendant and LCN Sufficient to Confer Specific Personal Jurisdiction**

Courts also have found personal jurisdiction to exist under Section 302(a)(1) where an agency relationship exists between a defendant and a third party. "To constitute an agent for the purposes of [CPLR § 302], the alleged agent must have engaged in purposeful activities in [New York] State for the benefit of and with the knowledge and consent of the non-domiciliary and the non-domiciliary must exercise some element of control over the agent." *Teachers Ins. and Annuity Ass'n v. Butler*, 592 F.Supp. 1097, 1101 (S.D.N.Y.1984); *see CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir.1986). While the principal need not exercise absolute control over the decisions or acts of the putative agent, (*see CutCo*, 806 F.2d at 366) a sufficient

amount of control "may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." *Scholastic, Inc. v. Stouffer*, 2000 WL 1154252, at *5 (S.D.N.Y. Aug.14, 2000). However, "the formal trappings of agency are not as important as the realities of the situation." *Teachers Ins*., 592 F.Supp. at 1102.

Plaintiff alleges that Defendant, through LCN, transacted business in New York in negotiating and entering into the subject contract between Plaintiff and LCN. *See* Opp. at 13. Defendant argues, however, that (1) Defendant was not identified in the contract between Plaintiff and LCN, and (2) that payments for services were remitted to Plaintiff by LCN, not Defendant. *See* Reply at 3. Accordingly, it argues, "Plaintiff has not sufficiently alleged that LCN acted in New York, with the knowledge and consent of, and under control of, Haven Health." *See id.*

First, regarding whether Plaintiff has made a *prima facie* showing that LCN purposefully engaged in any conduct in New York, the Court finds that Plaintiff has alleged sufficient facts to demonstrate that LCN engaged in purposeful activities in New York for the benefit of Defendant. Like Plaintiff does in its Opposition (Opp. at 15), the Court relies on *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.* informative. *See* 319 F. Supp. 2d 352, 358 (S.D.N.Y. 2004), as persuasive authority. There, defendants argued that because they "did not directly negotiate, agree to, or execute" an agreement with plaintiffs, plaintiffs' causes of action did not "aris[e] from" business transactions by defendants within New York." *See id.* (citing Section § 302(a)(1)). The court found this argument unpersuasive, because the agent's negotiation, execution, and other acts in connection with the contract in New York was sufficient to confer personal jurisdiction over both the agent and the defendants. *See id.* Plaintiff alleges here that "LCN approached Papaya Media on behalf of a valued client, Haven Health, to conduct

a digital marketing campaign that replicated the LCN Campaign." Compl. ¶ 61. Plaintiff also pleads that LCN, "as Haven Health's exclusive agent, paid Papaya Media" for the campaign until August 2023 (*id*. ¶ 83), and that Papaya received its final payment "on behalf of Haven Health" on August 21, 2023. *Id.* ¶ 89. Defendant does not dispute these allegations. The Court, therefore, finds that Plaintiff has made a *prima facie* showing of LCN's purposeful conduct in New York.

Next, regarding the "knowledge and consent" factor, the Court finds Defendant's argument unavailing. Plaintiff alleges – and Defendant does not dispute – that it utilized and/or benefited from the services of Plaintiff (a New York company). *See* Compl. ¶ 174. Although Defendant accurately notes that it was not a party to the contract between Plaintiff and LCN, Defendant does not dispute that LCN was its agent in facilitating a relationship with Plaintiff. More specifically, Defendant does not counter the allegations and explicit evidence that Plaintiff was granted access to a Microsoft Ads account from an employee of Defendant: Exhibits 1 and 2 to the Flores Declaration demonstrate that Plaintiff's founder and sole shareholder was invited by a Haven email address to join Defendant's advertisement platforms. *See* Flores Decl. Exs. 1, 2. It is not possible, therefore, for Defendant to have received the benefits of Plaintiff's services through LCN without Defendant's knowledge and consent if Defendants are the ones who granted Plaintiff access to *its own* platforms. *See id*. Defendant's blatant failure to acknowledge this relationship with Plaintiff ignores the "realities of the situation." *See Teachers Ins*., 592 F.Supp. at 1102.

This case is similar to the *Teachers* case. There, the evidence was "substantial" that a third party was "specifically and exclusively authorized" by Defendant to secure financing from Plaintiff, a New York lender. *See id*. The court found that "it is difficult to understand, much less to accept, the defendants' contention that they had no control over [the third party]". *See id.* The

same is true here, as "[Haven] does not dispute the Complaint's allegations that Papaya provided services, and Haven paid for those services." *See* Opp. at 9.

"A company cannot deputize another to take certain actions on its behalf and then disclaim knowledge or interest when those actions give rise to a legal dispute." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 319 F. Supp. 2d at 358. The Court finds that Plaintiffs sufficiently alleged that LCN engaged in purposeful conduct in New York with the knowledge, consent, and control of Defendant, so that Defendant transacted business in New York as required by Section 302(a)(1).

**ii. "Arising From" Prong**

A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V.*, 450 F.3d at 103 (citation omitted). This "inquiry under the statute is relatively permissive." *Wilson v. Dantas,* 128 A.D.3d 176, 184 (2015), *aff'd*, 29 N.Y.3d 1051 (2017). Typically, "a cause of action 'arises from' a business transaction when 'a defendant . . . breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York.'" *Torres v. Monteli Travel, Inc.,* 2011 WL 2670259, at *5 n. 3 (E.D.N.Y. July 7, 2011) (citing *Beacon Enters. Inc. v. Menzies,* 715 F.2d 757, 764–65 (2d Cir. 1983)).

Construing the Complaint in the light most favorable to Plaintiff (*see Thorsen*, 996 F.Supp.2d at 157), the Court finds that there is an articulable nexus between the advertising services by Plaintiff and the cause of action Plaintiff has sued upon – that is, Defendant's alleged continued use of Plaintiff's advertising services without compensation.

In sum, the Court finds that Plaintiffs have made the necessary showing at this stage of the case that Defendant's contacts with New York are of the quantity or quality necessary to establish specific personal jurisdiction under Section 302(a)(1). *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194 (2d Cir. 1990) ("Prior to the holding of an evidentiary hearing, the plaintiff need only make a *prima facie* showing that jurisdiction exists.").

**b. CPLR § 302(a)(2) and CPLR § 302(a)(3)**

Next, Plaintiff contends, through its Opposition, that the Court may also confer specific jurisdiction over Defendant through Sections 302(a)(2) and 302(a)(3). Because the Court has already found personal jurisdiction appropriate under Section 302(a)(1), it is not required to analyze the additional statutory theories[2], but nonetheless does so below.

**i. CPLR § 302(a)(2)**

Section 302(a)(2) provides in part that a New York court may exercise personal jurisdiction over any nondomiciliary who "in person or through an agent" commits a tortious act within the state when the plaintiff's claim directly relates to or arises out of that tortious act.

The Court finds that Plaintiff has failed to allege the necessary requirements under Section 302(a)(2) because it "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Moreover, "the defendant or his agent [must] be physically present in New York." *Id.*; *see also In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *6 (E.D.N.Y. Sept. 20, 2017) (finding no basis for specifical personal jurisdiction under Section 302(a)(2) where defendant was not present in the

---

[2] *See Wheeler v. BRAC Int'l*, No. 23-CV-9509 (GHW) (KHP), 2025 WL 1870833, at *10 (S.D.N.Y. June 18, 2025), *report and recommendation adopted*, No. 1:23-CV-9509-GHW-KHP, 2025 WL 1865116 (S.D.N.Y. July 6, 2025) ("Having found that personal jurisdiction is appropriate under CPLR Section 302(a)(1), there is no need to address jurisdiction under the other statutory theories.")

state, nor did any agency relationship exist between defendant and a third party). Here, Plaintiff does not allege that either LCN or Defendant were ever physically present in New York, nor can it point to comparable case law where similar actors were found to qualify as tortfeasors "within the state." *See* Opp. at 18. This argument, thus, fails.

**ii. CPLR § 302(a)(3)**

To establish personal jurisdiction under Section 302(a)(3), a plaintiff must show that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; and (4) the defendant (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Gazzillo v. Ply Gem Indus., Inc.,* No. 117CV1077MADCFH, 2018 WL 5253050, at *6 (N.D.N.Y. Oct. 22, 2018) (citing N.Y. C.P.L.R. § 302(a)(3)).

"To determine whether an injury occurred within the state, New York courts apply the situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Id.* (quoting *Bank Brussels Lambert*, 171 F.3d at 791). The "situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

Here, Plaintiff contends in its Opposition that the situs of its injuries is New York, as "it is [where Papaya] is located, from where it created and shared its trade secrets, and where Haven's conduct now threatens Papaya's New York customer-base." *See* Opp. at 19. Defendant, in turn, argues that it is Plaintiff's resulting damages that occurred in New York, and the actual

injury was outside the state. *See* Reply at 7. The Court agrees with Defendant. Applying the situs-of-injury test, the alleged injury here does not arise of Plaintiff's services provided, but instead, Defendant's failure to pay for such services. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) ("The alleged injury here does not arise out of the legal services provided, but out of ATI's alleged failure to pay for such services."); *see also Tan v. SMS Inv. Grp., LLC*, No. 15-CV-3719(ADS)(ARL), 2016 WL 1171605, at *13 (E.D.N.Y. Mar. 24, 2016) (holding the same).

Therefore, the Court declines to exercise personal jurisdiction stemming from Section 302(a)(2)-(3) but still finds specific jurisdiction exists under Section 302(a)(1).

**3. Due Process**

"After determining [whether] personal jurisdiction is appropriate under the long-arm statute, the Court must also consider whether the exercise of that jurisdiction would comport with due process." *Car-Freshner Corp. v. Scented Promotions, LLC,* No. 519CV1158GTSATB, 2021 WL 1062574 at *6 (N.D.N.Y. Mar. 19, 2021). "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). "With respect to minimum contacts, [the court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citation omitted). "With respect to [the court's] analysis of reasonableness as part of the due process inquiry, [the court] ask[s] whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (citation omitted). "In determining whether an exercise of personal jurisdiction is reasonable, the Court must consider the following factors: '(1) the

burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.' " *Id.* at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).

Regarding the minimum contacts inquiry, the Court has discussed previously that these contacts are sufficient to justify the Court's exercise of specific personal jurisdiction over Defendant and therefore comport with the Due Process Clause.

Regarding the reasonableness inquiry, Defendant has not argued that there would be a significant burden to defend this case in New York. The Court therefore finds that in the absence of a burden argument, the inconvenience Defendant faces "does not require us to shield it from the reach of the long-arm statute." *See Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 471 (1988). Next, "New York has an undeniable interest in providing redress to its own citizens", and because the alleged injuries to Plaintiff occurred in New York, the Court finds that it is "reasonable" to maintain this litigation in New York. *See Photoactive Prods., Inc.*, 99 F. Supp. at 290. Furthermore, there is evidence, as Plaintiff alleges, that New York residents are still being targeted by these advertisements designed by Plaintiff and now used by Defendant, so that Plaintiff has an interest in obtaining relief in New York. *See* Compl. ⁋⁋ 32, 57. Finally, Defendant has not argued any substantive social policies at issue, or how the interstate judicial system's interest in obtaining the most efficient resolution of the controversy would be furthered by permitting this case to be heard in another forum. *See Photoactive Prods., Inc.,* 99 F. Supp. 2d

at 290. Therefore, the Court finds that exercising personal jurisdiction over Defendant comports with due process.

**B. Venue**

The Plaintiff asserts that venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (b)(3) ("Section 1391"), which state in relevant part that:

> **(b) Venue in general.**--A civil action may be brought in--
>
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Moreover, Section 1391(c)(2) provides that, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." That is, personal jurisdiction over a sole corporate defendant provides a proper basis for venue. *See The Rockefeller Univ. v. Ligand Pharms.*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (citation omitted); *see also PDK Labs, Inc. v. Proactive Labs, Inc.,* 325 F.Supp.2d 176, 182 (E.D.N.Y. 2004) ("[S]ection 1391(c) equates jurisdiction with venue . . . for corporate defendants.") (quoting *Laumann Mfg. Corp. v. Castings USA,* 913 F.Supp. 712, 719 (E.D.N.Y. 1996). Thus, Defendant is deemed present in the Eastern District of New York for venue purposes because as previously discussed, the requirements of personal jurisdiction have been satisfied. *See Laumann MFG. Corp.*, 913 F.Supp. at 719 (finding venue proper despite that defendant "does not reside in

the Eastern District of New York, no substantial part of the events or omissions occurred in this district, and there is another district where venue is proper" because the court found personal jurisdiction over defendant.). Accordingly, the Court need not assess Plaintiff's other arguments for why venue is proper under Section 1391(b) or (c). *See Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 334 (S.D.N.Y. 2025) (citing *Hall* v. *S. Orange*, 89 F. Supp. 2d 488, 493 (S.D.N.Y. 2000) (noting that Section 1391(b) "clearly offers two possibilities for an appropriate venue," and that "[v]enue is proper if either one of those conditions is met").

## IV. <u>CONCLUSION</u>

For the reasons set forth in this Report and Recommendation, the undersigned respectfully recommends that motion to dismiss for lack of personal jurisdiction and improper venue be denied in its entirety.

## V. <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any request for extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct.

466, 88 L.Ed.2d 435 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3D 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
July 27, 2026

*/s/ Lee G. Dunst*

**LEE G. DUNST**
United States Magistrate Judge